■ 17 E. 80TH REALTY CORPORATION et al., Plaintiffs, and MELINDA ROTHEL et al., Respondents-Appellants, v 68TH ASSOCIATES et al., Appellants-Respondents, et al., Defendant.—Order and judgment (one paper) of the Supreme Court, New York County (Elliott Wilk, J.), entered October 18, 1989,

which denied defendants' motion to reopen the trial, and which awarded plaintiffs Melinda Rothel and Eliot Janeway $323,500 plus interest on their fraud cause of action and $880,000 plus interest on their breach of contract action, unanimously modified, on the law, to the extent of reducing the award for breach of contract to $750,000, as demanded in the complaint, plus interest and, except as so modified, affirmed, without costs.

This action arises out of a plan of cooperative conversion for the premises known as 17 East 80th Street, located in the City and County of New York. The conversion was sponsored by defendant 68th Associates, a joint venture comprised of Robert F. Little, Robert F. Little, Inc., William MacMaster, William F. MacMaster, Inc. and FSB Properties, Inc. ("FSB"). FSB is a wholly-owned subsidiary of defendant Flushing Savings Bank ("Flushing") which extended mortgage loans to purchasers of shares in the cooperative corporation. Supreme Court entered judgment against all these defendants on the fraud claim advanced by plaintiffs Melinda Rothel and Eliot Janeway, tenant-shareowners in the corporation. The court entered judgment against Robert F. Little, Inc., William F. MacMaster, Inc. and FSB on Rothel and Janeway's breach of contract action. Defendants appeal from the respective judgments entered against them, and plaintiffs Rothel and Janeway cross-appeal from Supreme Court's denial of their request for punitive damages.

Prior to trial, the other tenant-shareholders and the cooperative corporation, plaintiff 17 E. 80th Realty Corporation, settled their claims against defendants arising out of the cooperative conversion. However, no copy of the stipulation of settlement appears in the record. Also prior to trial, William B. May Co., the managing agent for the sponsor, was dismissed as a party defendant.

Apartments 10 and 2 were respectively purchased by plaintiffs Rothel and Janeway, individually, while apartment 9 was purchased jointly for the purpose of renting it to others. After taking up residence, plaintiffs assert that their units were discovered to contain a number of construction defects. At trial, it was apparent that the most serious of these involved the ventilation systems in the kitchen and bathroom areas of the subject units. Upon inspection, these proved to consist of dummy sheet-metal ducts which simply terminated in the wall or ceiling space, without any connection to a central exhaust duct and fan. There is no merit to defendants' suggestion that the evidence of dummy vents installed in the subject

apartments was insufficient. Supreme Court correctly found that the evidence overwhelmingly demonstrated that the absence of operable ventilation systems and the inadequate construction of certain interior walls, both of which violate the Building Code, constitute a fraud perpetrated by all defendants and a breach of contract committed by defendants Robert F. Little, Inc., William F. MacMaster, Inc. and FSB.

There is also no merit to the assertion that defendants were "surprised" by the introduction of evidence concerning deficiencies in the ventilation of the units. This condition was explicitly complained of in plaintiffs' bill of particulars dated April 5, 1983. The four-and-one-half years which intervened before the commencement of trial afforded defendants ample opportunity to investigate this aspect of the complaint.

In reaching its verdict, Supreme Court declined to reopen the trial to receive additional documentary and testimonial evidence and to permit further discovery. We note that this litigation continued for six years prior to the start of trial in October, 1987 which, because of adjournments to permit defendants to produce witnesses and obtain documentary evidence, took some nine months to complete. Moreover, the relevant document sought to be belatedly introduced is a set of "as-built" plans which defendants steadfastly maintained had been destroyed in the face of repeated attempts by plaintiffs to secure this evidence. Under these circumstances, the court's refusal to further protract the proceedings hardly represents an abuse of discretion, and defendants cannot complain that they were not offered ample opportunity to locate this evidence.

In addition to the arguments advanced by the other defendants, FSB and Flushing ("The Bank") assert that plaintiffs' complaints with respect to the ventilation of their units comprise a building-wide claim which was settled by the stipulation with the cooperative corporation and the other tenants. The Bank further asserts that an oral decision and order of the court dated February 5, 1987 precluded plaintiffs from introducing evidence regarding this claim at trial.

The court's ruling on this issue states, in pertinent part: "The individual in this case who owns a particular apartment and who has particular property, which is the responsibility of the individual and over which the corporate owner has no control, it seems to me can pursue those individual claims. And so at the trial I will permit the individual to bring in evidence and to prove a case with respect to those individual claims. And to the extent that the corporate owner has or will

act to bind the corporation, there will [be] no proof and no award with respect to those items in favor of Rothel or Janeway." The Bank now asserts that, because the ductwork and other mechanical components are the property of the cooperative corporation, defects in the ventilation system do not afford a basis for an individual claim and that no testimony with respect to the lack of an operable ventilation system in plaintiffs' units should have been received.

While The Bank's argument has technical merit, it is entirely disingenuous in that whatever claims were resolved by the settlement reached with the cooperative corporation and the other tenants, plailntiffs Rothel and Janeway are not parties to that agreement and are not bound by its provisions. Moreover, we note that the moving defendants requested, curiously by way of a motion for summary judgment, a declaration "that the delivery of a general release by the corporate plaintiff forecloses any further claims by any individual plaintiff against any of the defendants as regards any condition for which the defendants would otherwise be responsible except as to conditions restricted to the perimeters of apartment units covered by proprietary leases granted to the plaintiffs JANEWAY and ROTHEL and both of them." The extent to which Rothel and Janeway might be precluded by the settlement from asserting a cause of action is best determined by reference to the written stipulation. However, from our examination of the record, defendants received exactly the relief they requested when the court limited testimony to claims "individual" to Rothel and Janeway. The absence of ventilation in their respective apartments is clearly a condition limited to the perimeter of those units. We reject The Bank's overt attempt to enforce against Rothel and Janeway the terms of a stipulation which is not in evidence and which they refused to sign.

If The Bank's reasoning were to be accepted, all evidence with respect to the physical condition of the subject units would have to be disregarded because, in a cooperate plan of organization, the physical premises are the property of the cooperative corporation and within its control. Clearly, this was not the thrust of Supreme Court's order, a fact which is self-evident from the court's denial, on May 23, 1988, of a motion to dismiss Rothel and Janeway's claims as contrary to that order. Finally, while the stipulation is not part of the record, it appears that the court presided over the settlement negotiations and was quite cognizant of which claims were compromised and which remained viable.

The final argument advanced by defendants concerns the calculation of damages. They urge that damages should have been awarded based upon the cost to correct the defects in the premises and not on the basis of their diminution in value. Furthermore, defendants assert that plaintiffs' expert witnesses overstated the extent to which the value of each unit was diminished.

Whatever merit there may be to defendants' argument, it is impossible to assess from the record which is devoid of testimony to contradict the valuation placed upon the damages by plaintiffs' witnesses. Defendants called no witness to contest the diminished value of the subject premises and offered no proof with respect to the cost to remedy the defective conditions. Defendants may not advance, for the first time upon this appeal, the argument that the court employed the wrong method of calculating damages. Nor may it be said that Supreme Court's assessment of the damages is contrary to the evidence adduced at trial. Defendants' only meritorious contention is that the damages awarded on plaintiffs' fraud claim exceed the amount demanded in the complaint. In the absence of a motion to amend the ad damnum clause, damages are limited to the amount sought in the complaint (CPLR 3025; *see, Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18).

Finally, with respect to plaintiffs' cross-appeal, we note that the court's refusal to award punitive damages is well within the valid exercise of its discretion. Concur—Carro, J. P., Ross, Kassal and Rubin, JJ.