OPINION OF THE COURT
Howard M. Aison, J.
Plaintiff, an automobile dealership, commenced a commercial claim action against defendant alleging that defendant traded in a vehicle without advising plaintiff that the vehicle had been salvaged. A trial was held on August 8, 2002, September 19, 2002, and November 21, 2002. Exhibits were received into evidence and both sides submitted written summations.
*718 According to plaintiff, on January 3, 2002 the defendant purchased from plaintiff a 1993 Jeep Grand Cherokee (Grand Cherokee) for the sum of $11,251 (plaintiffs exhibit No. 1) and traded in his 1995 Chevrolet Silverado pickup (Silverado). Plaintiff appraised the Silverado, agreed to pay off the lien held by the Transims Federal Credit Union in the amount of $7,992, and did so (plaintiffs exhibit No. 2). Plaintiff had been in contact with a wholesaler who agreed to purchase the Silverado from plaintiff for the sum of $7,992. Defendant paid to the plaintiff the balance due and drove off as the proud owner of the Grand Cherokee. On January 14, 2002, the plaintiff received the certificate of title from the Transims Federal Credit Union (plaintiffs exhibit No. 3) and it revealed, much to plaintiffs surprise, that the Silverado was designated as a “rebuilt salvage” vehicle. Plaintiffs deal with the wholesaler fell through and plaintiff had to dispose of the Silverado at an auto auction receiving the sum of $4,925 (plaintiffs exhibit No. 4). Plaintiff now is seeking to recover the lost $3,000 from defendant.
Records subpoenaed from the Department of Motor Vehicles (DMV) reveal that the Silverado was registered with DMV on April 17, 2000 and on the registration application the defendant set forth that the Silverado had previously been junked and repaired (plaintiffs exhibit No. 5). There was also filed with DMV a certificate of title, signed by the defendant on April 17, 2000, reflecting the name of the prior owner of the Silverado, David B. Souza, Jr. The certificate of title reveals that the Silverado was a “rebuilt salvage” vehicle (plaintiffs exhibit No. 5).
The defendant maintained through the trial that he was never aware that the Silverado was a “rebuilt salvage” vehicle. According to defendant, he purchased the Silverado from Mr. Souza in 2000 and Mr. Souza did all of the paperwork. Thereafter DMV sent the certificate of title directly to the Transims Federal Credit Union where it remained until forwarded to plaintiff. When the defendant brought the Silverado to plaintiff in 2002 he never made any representations regarding the vehicle and he allowed plaintiff to inspect it.
Mr. Souza testified that he purchased the Silverado with front-end damage and he repaired it. Mr. Souza was not certain as to whether he or the defendant registered the vehicle when he sold it.
After reviewing all of the testimony and taking into consideration the interest, demeanor, manner of testifying and the *719 reasonableness and consistency of the testimony, we find that the defendant is not a credible witness. Mr. Souza executed the certificate of title on April 14, 2000 and we infer that he did so after having been paid. Had Mr. Souza registered the vehicle at DMV we also infer that the defendant would have also executed the certificate of title and registration documents on April 14, 2000. These documents were executed by defendant on April 17, 2000, the date that they were filed with DMV. The certificate of title clearly sets forth that the Silverado was a “rebuilt salvage” vehicle and on the registration application the defendant set forth that the Silverado had been junked and repaired. The plaintiff has established that the defendant was aware, during all of the negotiations with plaintiff regarding the trade-in, that the Silverado was a “rebuilt salvage” vehicle.
However, this is not the end of the story. The doctrine of “caveat emptor” is alive and well in the State of New York. It reaches back to 1799 when the Supreme Court of Judicature of New York held that the rule of caveat emptor requires a buyer to examine what is being sold prior to making a purchase and the seller is not responsible for revealing a defect unless the seller practiced fraud or concealment in order to entrap the buyer (Jackson Bronck v Crysler, 1 Johns Cas 125 [1799]). In a December 2002 case, the Appellate Division, Third Department, held that the doctrine of caveat emptor imposes no duty upon a seller to disclose any information in an arm’s length transaction unless some conduct on the part of the seller, other than mere silence, rises to the level of active concealment (see, Gizzi v Hall, 300 AD2d 879 [2002]). In a November 2002 case, the Appellate Division, First Department, held that the doctrine of caveat emptor applies if there is no evidence that the seller concealed anything that the buyer could not have discovered for himself by appropriate inquiry (Gartner v Young-Hee Lowe, 299 AD2d 198 [2002]).
When the defendant discussed a trade with plaintiff, plaintiff requested that defendant complete a trade-in information agreement and defendant complied (People’s exhibit No. 1). The agreement sets forth that the defendant acknowledged that the Silverado did not have a welded or bent frame, that the motor block was not cracked, welded or repaired, and that the vehicle had not been flood damaged or declared a total loss for insurance purposes. The defendant was not asked to acknowledge that the Silverado was not a “rebuilt salvage” vehicle. At the time of the trade, had the plaintiff so checked, DMV records would clearly reveal that the Silverado was a *720 “rebuilt salvage” vehicle. It is common knowledge that automobile dealers also have access to vehicle history reports by use of Carfax or other similar providers.
The plaintiffs argument that Vehicle and Traffic Law § 429 imposed upon the defendant a duty to disclose is rejected. That section requires that any person, as well as insurance companies and vehicle dismantlers, shall notify DMV after acquiring a vehicle which has been sold as junk or salvage or which is to be dismantled for use other than as a motor vehicle. The section discards the notification requirement if the records of DMV already reflect the status of the vehicle (Vehicle and Traffic Law § 429 [c]). As set forth above, when defendant purchased the Silverado from Mr. Souza the certificate of title issued to defendant indicated that the vehicle was a “rebuilt salvage” vehicle. Vehicle and Traffic Law § 429 also imposes a civil penalty upon a person who, with the intent to defraud a subsequent purchaser as to the applicable status of a motor vehicle, either makes any false statement in title applications or fails to submit documentation to DMV that the vehicle is a junk or salvage vehicle (Vehicle and Traffic Law § 429 [d]). The defendant did not do the former and he was not subject to any statutory requirement to do the latter.
Judgment for defendant and plaintiffs commercial claim against defendant is dismissed, with prejudice.